RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 12/21/11
JPB

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| HENRY LEE HARRIS | DOCKET NO. 11-CV-831; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| TIM WILKINSON, ET AL | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Pro se Plaintiff Henry Lee Harris filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of the Louisiana Department of Corrections, and he is incarcerated at the Winn Correctional Center in Winnfield Louisiana. He claims that he was denied adequate medical care on more than one occasion. He names approximately fourteen parties as defendants. He was ordered to file a supplemental and amending complaint, which he did on or around September 29, 2011.

### *Plaintiff's Allegations*

Plaintiff alleges that on May 11, 2010, he went to LSU Hospital in Shreveport for hernia surgery. He returned to WNC the same day and was placed in the infirmary for observation and recovery. [Doc. #10]

On May 13-17, 2010, Plaintiff experienced pain and difficulty urinating. He asked for care from May 13-16, but was denied care by Ms. Keefer, Mr. Chad Long, Mrs. Gaskill, and Ms. Burke, which resulted in hospitalization, prostate surgery, and bladder injury. [Doc. #10, p.1] On May 17, 2010, Plaintiff was unable to urinate. Ms. Burke had Plaintiff transported to the emergency room at LSU

hospital in Shreveport. [Doc. #10, p.2] Plaintiff was immediately admitted and catheterized. He remained inpatient for six days.

Plaintiff makes the general allegation that Dr. Cleveland knowingly, intentionally, and recklessly denied him medical care, which resulted in a "bladder injury," impotence, having to undergo prostate surgery, and having to be catheterized for a month and a half.

Plaintiff alleges that Mona Heyse acted with deliberate indifference by denying his administrative grievance after the time limit had expired. He alleges that the delay and denial show that Ms. Heyse was "motivated by evil motive or intent because it demonstrates reckless or callous indifference" to Plaintiff's protected rights. [Doc. #10, p.2]

Plaintiff claims that he informed Warden Wilkinson of constitutional violations on July 26, 2010. The warden stated, "I don't give a damn about the Constitution," and instructed Plaintiff to write down what happened and what remedy Plaintiff wanted. [Doc. #10, p.2] Plaintiff complied with the instruction, but no corrective action was taken. Plaintiff alleges that the warden's "fault here is found upon the breach of his obligation to maintain, so as to avoid creation of undue injury to others (the legal fault thus arising from code provisions) for not having an administrative remedy procedure box located in the medical department for inmate complaints or mail, etc...." Plaintiff claims that he forwarded

his complaint as instructed by the warden, but it was ignored.

On May 24, 2011, the warden issued a disciplinary infraction to Plaintiff for lying to Wilkinson when Plaintiff claimed that he was passing pure blood in his urine. Plaintiff was punished with disciplinary segregation.

On July 1, 2010, Plaintiff requested a medical emergency for chest pains. Nurses Chad Long and Mrs. Cleveland checked Plaintiff's vitals signs. Plaintiff's blood pressure was "critically unstable" and his EKG was "critically abnormal." [Doc. #10, p.3] Plaintiff says that he was "left to die" in Exam Room 1 from 9:15 a.m. until 1:15 p.m. He claims that this denial/delay in medical care lead to him being "over-dose" and sent to the hospital. He was diagnosed with chest pain of unknown etiology. Plaintiff was transported back to WNC on July 3, 2010.

Dr. Cleveland ordered that Plaintiff's blood pressure medication be discontinued unless the bottom number was one hundred or above. According to Plaintiff, Cleveland knowingly and intentionally denied and delayed medical care leaving Plaintiff at risk of damage and future harm. [Doc. #10, p.4]

Plaintiff had chest pain again on July 5, 2010. Ms. Williams check Plaintiff's vitals, which were again "critically unstable", and she "intentionally, knowingly, and recklessly denied, delayed and refused medical attention... willfully denying me access to be seen by the doctor." [Doc. #10, p.4] After a couple of hours, Ms.

Williams conducted an EKG, and Plaintiff was sent to the emergency room and admitted to the hospital.

Plaintiff alleges that on July 8, 2010, Dr. Cleveland "had a job to do, and he did not do it." According to Plaintiff, Cleveland "took virtually no steps to correct the situation." [Doc. #10, p.4]

He claims that on May 23, 2011, Mrs. Thisel knowingly, intentionally, recklessly, and willfully "delayed allowing [Plaintiff] to see the doctor." [Doc. #10, p.5]

On June 5, 2011, Plaintiff made a medical emergency call for chest pains. LPN Melissa Warren told Plaintiff that she was writing him up for malingering, despite Plaintiff having blood pressure of "170/102 in his right arm and 163/102 in his left arm." [Doc. #10, p.6] Nurse Warren did not give Plaintiff any medical treatment for his chest pain. He complains that Warden Nicole Walker was aware that he was receiving inadequate medical care, yet she took no steps to correct the situation. He alleges that Walker is "vicariously liable" for the conduct of the medical staff.

On August 16, 2011, Plaintiff was quarantined on his tier with eleven other inmates due to a scabies outbreak. He complains that he was not examined by a dermatologist or physician, and that LPN Richardson could not have legally prescribed the insecticide that she provided to Plaintiff. [Doc. #10, p.5]

Plaintiff complains that he was improperly charged for sick

calls for his ongoing chronic condition.

In conclusion, Plaintiff alleges that the actions of the above individuals have caused him "mental injury."

### Law and Analysis

Plaintiff claims that Warden Nicole Walker is vicariously liable for the actions of the medical staff. It is well-settled that "[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations or (ii) they implement unconstitutional policies that causally result in Plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), *cert. denied,* 508 U.S. 951 (1993). **"Vicarious liability does not apply to §1983 claims."** Pierce v. Texas Dept. of Crim. Justice, Inst. Div., 37 F.3d 1146, 1150 (5th Cir. 1994), *cert. denied,* 514 U.S. 1107 (1995).

In order to state a claim for the denial of medical treatment, the facts underlying a claim of deliberate indifference must clearly evince the serious medical need in question and the alleged official dereliction. See Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "Deliberate indifference is an extremely high standard to meet." Domino v.

Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir.). Even "gross negligence" does not establish deliberate indifference. Hernandez v. Tex. Dep't of Prot. and Reg. Servs., 380 F.3d 872, 882 (5th Cir. 2004).

According to Plaintiff's complaint, no treatment was recommended for his "chest pain with unknown etiology." Plaintiff was examined each time he complained of chest pain. He was transported to the emergency room at LSU hospital on multiple occasions. On each occasion, the LSU doctors concluded that Plaintiff had chest pain of unknown etiology. Plaintiff was never in cardiac arrest, and the physicians could not find any cause for Plaintiff's chest pain. The hospital physicians diagnosed him with chest pain of unknown origin. Plaintiff has not presented factual allegations that any official ignored him or refused to treat him. He has, in fact, described otherwise. Plaintiff has only presented conclusory allegations that he was denied care and that the defendants acted with deliberate indifference.

Moreover, a plaintiff must present more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009)(citations omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff's amended complaint is riddled with labels and conclusions and recitations of the elements of an action for the denial of medical care. Plaintiff alleges throughout the amended complaint that various defendants acted deliberately, intentionally, knowingly, recklessly, willfully, etc. However, the document lacks factual allegations to support these conclusions.

Plaintiff concludes that the knowing, intentional, reckless "denial of care" by Dr. Cleveland resulted in a bladder injury, impotence, having to undergo prostate surgery, and having to be catheterized for a month and a half. Plaintiff does not provide factual allegations as to why or how any action or inaction by Dr. Cleveland caused the above health problems. Instead, he makes the conclusion that the issues must have been caused by Dr. Cleveland's action or inaction. Again, conclusory allegations or simply alleging that a defendant acted knowingly, recklessly, intentionally, etc., is insufficient to state a claim for which relief can be granted.

To the extent that Plaintiff disagrees with the treatment or

medical care that he is receiving, he fails to state a claim for which relief can be granted. A disagreement with medical care does not state a claim under the Eighth Amendment See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997), *citing* Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).

Plaintiff's claims regarding Mona Heyse fail, as well. He complains that she acted with deliberate indifference by denying his administrative grievance after the time limit had expired. He alleges that the delay and denial show that Ms. Heyse was "motivated by evil motive or intent because it demonstrates reckless or callous indifference" to Plaintiff's protected rights. [Doc. #10, p.2] In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. The failure of an official to follow a regulation regarding the time for answering grievances, as is alleged here, does not violate constitutional minima.[1] Additionally, Plaintiff's allegation that Heyse's denial

---

[1] See Taylor v. Cockrell, 92 Fed.Appx. 77 (5th Cir. Feb.12, 2004)(not designated for publication)(citing Sandin, *supra*, and finding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005)(Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably merit less); (see also Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 138 (1977)(Burger, C.J., concurring)(applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required).

8

of his grievance was "motivated by evil intent because it demonstrates reckless or callous indifference" is entirely conclusory and speculative.

Plaintiff's complaint that LPN Richardson was without authority to prescribe scabies medication during an outbreak fails as well. He does not claim that he was denied treatment, only that an LPN cannot legally prescribed the insecticide that she provided to Plaintiff. The insecticide could have been an over-the-counter treatment or the physician could have prescribed it. Plaintiff does not allege that he even contracted scabies.

### Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's claim be **DENIED** and **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(B) against **all defendants <u>except</u> Ms. Keefer, Mr. Chad Long, Mrs. Gaskill, and Ms. Burke.** Service of process has been ordered on Keefer, Long, Gaskill and Burke.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual**

findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this _____ day of December, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE