UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| HENRY LEE HARRIS,<br>      Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 1:11-cv-00831 |
| VERSUS | |
| TIM WILKINSON, et al.,<br>      Respondent | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Henry Lee Harris ("Harris") on June 2, 2011 (Doc. 1) and amended on September 29, 2011 (Doc. 10). The only remaining defendants are Mitzi Gaskill and Renee Keiffer, both of whom are nurses employed in the medical department at the Winn Correctional Center ("WCC") in Winnfield, Louisiana (Docs. 22, 41).

Harris contends that, while he was incarcerated in WCC in May 2010, defendants denied him appropriate medical care for a urinary tract infection (Doc. 1). Harris contends that he had hernia surgery at the LSU Hospital on May 11, 2010 and returned to WCC the same day (Doc. 10). Harris contends he noticed problems when urinating from May 13 through May 17, 2010, for which he was denied medical attention by Nurse Keiffer and Nurse Gaskill on May 13, May 14, May 15, and May 16, 2010. On May 17, 2010, Harris was sent to

the emergency room because he was unable to urinate and remained hospitalized for six days (Doc. 10). Harris contends that, as a result, he had prostate surgery and a bladder injury (Doc. 10).

Gaskill and Keiffer answered the complaint (Doc. 23). Harris requested a jury trial (Doc. 55). Defendants then filed a motion for summary judgment (Doc. 58), with documentary exhibits. Harris has not opposed defendants' motion for summary judgment. Harris is presently incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana (Doc. 52).

## Law and Analysis

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party

controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Eighth Amendment

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 1980 (1994).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a § 1983 liability to that prisoner. <u>Farmer</u>, 511 U.S. 825, 114 S.Ct. at 1976. Subjective recklessness, as used in criminal law, is the appropriate test for deliberate indifference. <u>Norton</u>, 122 F.3d at 291, citing <u>Farmer</u>, 511 U.S. at 838-40, 114 S.Ct. at 1980.

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. <u>Easter v. Powell</u>, 467 F.3d 459, 464

(5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). However, an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment and deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition. Estelle, 97 S.Ct. at 291. Disagreement with medical treatment also does not state a claim for Eighth Amendment indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). Also, Hickman v. Moya, 181 F.3d 97 (5th Cir. 1999)(prison doctor's refusal to send plaintiff to specialist was disagreement over medical care or, at most, negligence). Inmates are entitled to reasonable medical care, not to the best medical care that money can buy. Mayweather v. Foti, 953 F.2d 91 (5th Cir. 1992).

Medical Care Claims

Harris contends in his amended complaint that he stayed in the prison infirmary after hernia repair surgery on May 11, 2010 (Doc. 10). Harris contends that RN Keiffer intentionally and knowingly refused him medical attention on May 13, 2010 when he complained that his penis was swollen and straining to urinate (Doc. 10).

Harris further contends that, on May 14, 2010, when he again complained of pain, RN Keiffer told him to "skin" back his penis and clean it and did not allow him to see the doctor.

Harris contends that, on May 15, 2010, Nurse Gaskill (and Nurse Long) refused to allow him to see the doctor for pain and straining to urinate.

Harris contends that, as a result, he was hospitalized, suffered a bladder/prostate injury, and had to wear a catheter for a month and a half (Doc. 10). Harris also contends he now suffers from erectile dysfunction (Doc. 10).

Nurse Keiffer states in her affidavit that, on May 14, 2010, she changed the dressing on Harris' hernia repair site, noted the site was tender to touch and had a nodule present, spoke at length to Harris, and told Dr. Cleveland about Harris' condition (Doc 58). Nurse Keiffer states in her affidavit that Dr. Cleveland told her that Harris' condition was normal (Doc. 58). Nurse Keiffer further states in her affidavit that, on May 15, 2010, Harris "stuck his head out of the ward" as she was leaving her office and told her he had a discharge from his penis (Doc. 58). Nurse Keiffer states that she told him to peel back the foreskin and clean it (Doc. 58).

The Health Services Administrator for WCC, Daniel Marr, states in his affidavit that he maintains the medical records at WCC and that, on May 15, 2010, Nurse Long evaluated Harris, did not see any signs of infection, and noted that Harris did not make any

6

complaints (Doc. 58). Marr further states in his affidavit that, on May 16, 2010, Harris was again evaluated by Nurse Long, who noted that Harris complained of increased swelling of his scrotum and penis, noted the area was tender to touch, and wrote that would "continue to monitor the situation" (Doc. 58). Nurse Long re-evaluated Harris again on May 16, 2010, noted that Harris was not in any distress at that time, and reported his findings to NP Richardson, who ordered that Harris be sent to the hospital the next morning (May 17, 2010) (Doc. 58).

It is noted that the medical records show that, on May 17, 2010, Harris was taken to the emergency room for complaints of swelling in the pubic area, tenderness to touch, and no output (Doc. 58, pp. 1074, 1672). Harris was found to have swelling in the scrotum and groin (Doc. 58, pp. 1078, 1672). Harris was returned to WCC on May 22, 2010 (Doc. 58, pp. 1074, 1672). The medical records do not appear to include the LSU Hospital records from May 17 through May 22, 2010.[1]

RN Keiffer contends she found a nodule at Harris' incision site on May 14, 2010 and reported it, and the tenderness at the

---

[1] It is noted that defendants' references to medical records in their affidavits do not in any way correlate by page number to the medical records electronically filed with the court. Moreover, defendants submitted 722 pages of medical records, most of which appear to be irrelevant since they pre-date the events at issue. However, Harris' medical records from LSU Medical Center in Shreveport on the dates at issue do not appear to be in the record.

site, to Dr. Cleveland, who told her it was normal. RN Keiffer admits that, when Harris complained to her of discharge from his penis, she told him to clean under the foreskin and apparently did not check his condition. However, the next day, Harris did not complain to Nurse Long about a discharge and Nurse Long did not see any signs of infection; it was not until May 16 that Harris complained to Nurse Long, who noted increased swelling and pain.

Harris and RN Keiffer agree on the course of events. Harris contends Keiffer denied him medical care. However, Keiffer consulted the doctor, who chose not to see Harris; Keiffer herself did not ignore Harris' complaints or deny him medical care. Harris does not dispute that Keiffer consulted Dr. Cleveland; apparently he was unaware of that event. Since there are no genuine issues of material fact concerning whether Keiffer denied Harris medical care which would preclude a summary judgment, defendants for summary judgment should be granted in favor of RN Keiffer.

Nurse Gaskill states in her uncontested affidavit that she did not see or evaluate Harris between May 13, 2010 and May 17, 2010 (Doc. 58). Harris states in his amended complaint that, on May 15, 2010, Nurse Gaskill (and Nurse Long) refused to allow him to see the doctor although he complained of pain and straining to urinate. It is possible (though pure speculation) that Harris called out to Gaskill at some point when he saw her passing by (as he did to Keiffer), making a complaint or asking for assistance, and she did

not "see" or "evaluate" him. The record before this court does not show whether Gaskill was not at work from May 13 through May 17, 2010, or was simply not assigned to evaluate Harris. However, the record and Marr's affidavit show that Nurse Long evaluated Harris on May 15 and did not see any sign of infection, and Harris did not voice any complaints that day.

Since Harris did not contest defendants' motion for summary judgment, Nurse Long's notes indicate that Harris did not complain or show any signs of infection on May 15, 2010, and Nurse Gaskill's uncontested affidavit shows that she did not see or evaluate Harris on May 13-May 17, 2010, there are no genuine issues of material fact which would preclude a summary judgment on the issue of whether Gaskill denied medical care to Harris.

Therefore, defendants' motion for summary judgment in favor of Nurse Gaskill should be granted, also.

Therefore, the remainder of Harris' action should be dismissed.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED as to Nurse Keiffer and Nurse Gaskill and that Harris' action against Keiffer and Gaskill be DENIED AND DISMISSED WITH PREJUDICE. Accordingly, the remainder of Harris' action should be dismissed.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and

Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _24th_ day of September 2014.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE